**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **JOSE ENRIQUE OJEDA DUARTE,** | § | |
| | § | |
| *Petitioner*, | § | |
| **v.** | § | |
| | § | |
| | § | |
| **WARDEN,** *in his/her official capacity as* | § | |
| ERO El Paso Camp East Montana Detention | § | |
| Center; | § | |
| **MARY DE ANDA-YBARRA,** *in her* | § | |
| *official capacity as* Field Office Director of | § | |
| El Paso, Texas, Office of Detention and | § | **EP-26-CV-00089-DCG** |
| Removal, U.S. Immigration and Customs | § | |
| Enforcement, U.S. Department of Homeland | § | |
| Security; | § | |
| **TODD M. LYONS,** Acting Director, | § | |
| Immigration and Customs Enforcement, U.S. | § | |
| Department of Homeland Security; | § | |
| **MARKWAYNE MULLIN,** *in his official* | § | |
| *capacity as* Secretary, U.S. Department of | § | |
| Homeland Security; and | § | |
| **TODD BLANCHE,** *in his official capacity* | § | |
| *as* Acting Attorney General of the United | § | |
| States, | § | |
| | § | |
| *Respondents*. | § | |

**<u>ORDER PARTIALLY GRANTING PETITIONER'S MOTION
FOR TEMPORARY RESTRAINING ORDER</u>**

Before the Court is Petitioner Jose Enrique Ojeda Duarte's "Emergency Motion for

Temporary Restraining Order" (ECF No. 6). The Court **GRANTS** the Motion **IN PART** and

**DIRECTS** Respondents to take all available steps to facilitate Petitioner's return to the United

States as soon as possible.

## I.    Background

On April 9, 2026, Petitioner filed a Motion for Temporary Restraining Order ("TRO").[1] In support, Petitioner stated that Respondents had recently transferred him to the Florence Processing Center in Florence, Arizona, to facilitate his removal from the country—even though his removal order is not yet final.[2] At the time of filing, Petitioner anticipated that the Government would either send him to Ecuador, where "he has no ties," or to Venezuela, the country he allegedly fled due to "ongoing threats and fear of being killed."[3] Petitioner thus asked the Court to (1) enjoin his removal; (2) order Respondents to transfer him back to the Western District of Texas; and (3) order Respondents to release him or give him a bond hearing.[4]

On April 16, 2026, Respondents notified the Court that the Government had already removed Petitioner Jose Enrique Ojeda Duarte to Caracas, Venezuela.[5] Respondents claim that "Petitioner's removal was an inadvertent error due to a data quality issue within DHS-ERO's case information system."[6] They do not dispute that "Petitioner's order of removal is not

---

[1] *See generally* Mot. TRO, ECF No. 6.

[2] *Id.* at 6.

[3] *Id.* at 5, 2.

[4] *Id.* at 7.

[5] Resp., ECF No. 8, at 1.

[6] *Id*.

*See also, e.g.*, *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) ("The United States represents that the removal to El Salvador was the result of an 'administrative error.'"); *Pablo Pablo v. Lyons*, 811 F. Supp. 3d 833, 837 n.22 (W.D. Tex. 2025) (reprinting statement from Government that United States Immigration and Customs Enforcement ("ICE") had stating that ICE "mistakenly" and "wrongfully" removed a habeas petitioner).

final"—and, thus, that the Government did not yet have any lawful authority to remove him to Venezuela (or anywhere else).[7]

According to Respondents, "ERO is currently working diligently to initiate the process to return Petitioner to the United States"[8]—which implies that the process hasn't yet begun. Respondents further represent that the return process requires coordination with various individuals and entities, including "the Attache who oversees ICE operations in Venezuela."[9] It thus remains unclear when (and whether) the United States and Venezuelan governments will be able to facilitate Petitioner's return.

Because Respondents already removed Petitioner, his first request that the Court enjoin his removal is now moot. And the Court cannot grant his third request, because "a court cannot render [the] ultimate relief sought in a habeas petition—releasing a detainee—in the form of a . . . TRO."[10] The Court therefore restricts its analysis to Petitioner's second request: that the Court order his transfer back to the Western District of Texas.

---

[7] Resp. at 1.

[8] *Id.*

[9] *Id.*

[10] *Saechao v. Noem*, No. 3:26-CV-0624, 2026 WL 602783, at *1 (N.D. Tex. Mar. 4, 2026).

*See also Ortega v. U.S. Immigr. & Customs Enf't*, No. 6:26-CV-00865, 2026 WL 776600, at *1 (W.D. La. Mar. 18, 2026) (explaining that courts must deny motions for TROs that "seek the same relief" as a pending habeas petition, because, otherwise, the motion for "immediate release would function as a form of accelerated review, circumventing the habeas process" (citation modified)); *Cano Alvarez v. S. La. ICE Processing Ctr.*, No. 26-0696, 2026 WL 660752, at *1 (W.D. La. Mar. 9, 2026) ("The Petitioner's request for immediate release is improper because one cannot skip the line by dressing a habeas petition in TRO clothes.").

## II.    Discussion

### A.    Jurisdiction

The Court must first consider whether it has subject matter jurisdiction to grant the relief

Petitioner requests. 8 U.S.C. § 1252(g) provides (in relevant part) that:

> no court shall have jurisdiction to hear any cause or claim by or on
> behalf of any alien arising from the decision or action by
> the Attorney General to commence proceedings, adjudicate cases,
> or execute removal orders against any alien under this chapter.

That's noteworthy here because the relief that Petitioner seeks—an order requiring Respondents

to return him to the Western District of Texas [11]—arguably "arises from" a decision or action to

execute Petitioner's removal order.

The Supreme Court, however, has adopted a "narrow reading" of 8 U.S.C. § 1252(g). [12]

As the Supreme Court explained in *Reno v. American-Arab Anti-Discrimination Committee*, that

provision "was directed against a particular evil: attempts to impose judicial constraints upon

*prosecutorial discretion.*" [13] And, following *Reno*, courts seem to agree that 8 U.S.C. § 1252(g)

---

[11] *See* Mot. TRO at 7.

[12] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).

[13] *Id.* at 485 n.9 (emphasis added); *see also id.* at 487 (characterizing 8 U.S.C. § 1252(g) as a "discretion-protecting provision").

does not preclude jurisdiction over purely legal questions.[14] That includes whether the

Government is authorized to remove an alien under a given set of circumstances.[15]

Here, Petitioner argues that he is entitled to relief because the Government has no

authority to remove aliens whose removal orders are not final.[16]  The Court concludes (as have

other courts) that this is a purely legal issue, meaning that 8 U.S.C. § 1252(g) does not strip the

Court of jurisdiction to decide it.[17] Seeing no other authorities that preclude the Court's review,

the Court concludes that it has jurisdiction to consider the Motion.

---

[14] *See, e.g.*, *Bowrin v. I.N.S.*, 194 F.3d 483, 485 (4th Cir. 1999) (determining that 8 U.S.C. § 1252(g) "do[es] not preclude federal court review of habeas corpus petitions raising questions of pure law"); *Jama v. I.N.S.*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd*, 543 U.S. 335 (2005) ("[W]e have no reason to assume that Congress intended to preclude the district court's habeas review of a pure question of law . . . ."); *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (We have jurisdiction to decide a "purely legal question" that "does not challenge the Attorney General's discretionary authority." (citing cases)); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [8 U.S.C. § 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions.").

[15] *See, e.g.*, *Jama*, 329 F.3d at 632 (concluding that 8 U.S.C. § 1252(g) did not preclude review of "the Attorney General's construction of a statute" or whether a statute authorized removal under the circumstances); *Siahaan v. Madrigal*, Civil No. PWG-20-02618, 2020 WL 5893638, at *5 (D. Md. Oct. 5, 2020) (determining that 8 U.S.C. § 1252(g) does not preclude courts from reviewing "the purely legal questions of whether . . . removal under the[ ] circumstances violates [applicable] statutory and constitutional provisions").

[16] Mot. TRO at 3, 6.

[17] *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 515 (D. Md. 2025).

In *Abrego Garcia v. Noem*, the Government removed an alien (Abrego Garcia) without a final removal order. *Id.* at 519. After determining that it retained jurisdiction, the district court ordered his return. Thereafter, the Government applied to the Supreme Court to stay the district court's order. *See* Application for Stay, *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025) (No. 24A), 2025 WL 1038907. Although the parties briefed the jurisdictional issue, *see, e.g.*, *id.* at 17–20, the Supreme Court did not explicitly pass on what effect (if any) 8 U.S.C. § 1252(g) had on Petitioner's arguments. *See Noem v. Abrego Garcia*, 145 S. Ct. at 1018. The Supreme Court did, however, uphold the district court's order to "facilitate" Abrego Garcia's return. *Id.*

This Court recognizes that it cannot infer, from the mere fact that the Supreme Court reached the merits of that issue, that the Supreme Court implicitly determined in *Abrego Garcia* that the district court had jurisdiction to enter that order. *See, e.g.*, *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the

**B.      Temporary Restraining Order**

Having determined that it retains jurisdiction, the Court now turns to Petitioner's request

for a TRO. Under Federal Rule of Civil Procedure 65, a TRO is "simply a highly accelerated and

temporary form of preliminary injunctive relief, which requires that the party seeking such relief

establish the same four elements for obtaining a preliminary injunction."[18] To prevail, the

movant must prove that:

(1)      he is likely to succeed on the merits;

(2)      he is likely to suffer irreparable harm in the absence of preliminary relief;

(3)      the balance of equities tips in his favor, and

(4)      that a TRO is in the public interest.[19]

Temporary restraining orders are "extraordinary relief and rarely issued."[20] In those rare

cases, "every restraining order must state the reasons why it issued; state its terms specifically;

and describe in reasonable detail—and not by referring to the complaint or other document—the

act or acts restrained or required."[21]

---

decision does not stand for the proposition that no defect existed."). Still, the fact that the Supreme Court did not vacate the district court's order for want of jurisdiction—despite the issue being fully briefed and directly before the Court—gives this Court some additional reassurance that it has jurisdiction to order the Government to facilitate Petitioner's return.

[18] *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (citation modified); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (establishing elements for obtaining a preliminary injunction).

[19] *See Winter*, 555 U.S. at 20.

[20] *E.g.*, *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999).

[21] FED. R. CIV. P. 65(d)(1).

### 1.     Likelihood of Success

The Court begins with the first TRO prong, which requires Petitioner to demonstrate a likelihood of success on the merits.[22] The parties agree that "Petitioner's order of removal is not final."[23] That's a problem because "[f]or the government to remove an  . . . alien from the United States, an immigration judge must first issue a 'final removal order' against the alien."[24] In fact, Respondents even admit that "Petitioner's removal was an inadvertent error."[25] The Court therefore finds that Petitioner is likely to succeed in arguing that the Government unlawfully removed him.

The more difficult question is whether that showing can support the preliminary relief that Petitioner seeks. In other contexts, courts have determined that "[t]he relevant inquiry of whether [a litigant has] shown a likelihood of success on the merits is whether they are likely to prevail on the causes of action they assert *in their complaint*."[26] Because this is a habeas action, the ultimate relief that Petitioner seeks is his release from custody.[27] Thus, to prevail on the

---

[22]  *See supra* note 19 and accompanying text.

[23] Resp. at 1.

[24] *United States v. Chinchilla*, 987 F.3d 1303, 1309 (11th Cir. 2021); 8 U.S.C. § 1231(a)(1)(B)(i) (noting that the Government's removal period begins only after "[t]he date the order of removal becomes administratively final").

[25] Resp. at 1.

[26] *See Bermudez v. SN Servicing Corp.*, No. 2:22-CV-01246-KJM-DB, 2022 WL 4280168, at *2 (E.D. Cal. Sept. 15, 2022) (emphasis added); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (determining that "new assertions of mistreatment that are entirely different from the claim raised and the relief requested" in a complaint "cannot provide the basis for a preliminary injunction" (citing *Stewart v. I.N.S.,* 762 F.2d 193, 198–99 (2d Cir. 1985)).

[27] *See generally* Pet., ECF No. 1.

Motion under the typical TRO framework, Petitioner would have to show a likelihood that the Court will grant his release.

Habeas cases, however, appear to present an exception to the typical TRO framework. Under similar circumstances—in other words, where the Government has wrongfully removed an alien while a habeas case is pending—courts have determined that aliens may satisfy the "likelihood of success" prong by showing that removal was unlawful.[28] In *Abrego Garcia v. Noem*, for example, the district court's "likelihood of success" analysis focused on whether the Government had wrongfully removed an alien (rather than whether the Government had wrongfully detained that alien).[29] After determining that the alien was likely to succeed in arguing that the Government wrongfully removed him, the district court ordered the Government to facilitate his return.[30] The Supreme Court upheld that order, concluding that the district court had "properly require[d] the Government to 'facilitate' [the alien's] release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador."[31]

In light of *Abrego Garcia*—and without yet weighing in on the merits of the Petition—this Court concludes that Petitioner is "likely to succeed on the merits" for the purposes of the Motion because the Government unlawfully removed him from the United States.

---

[28] *See, e.g.*, *Abrego Garcia v. Noem*, 777 F. Supp. 3d at 516–17.

[29] *See id.*

[30] *See id.* at 519.

[31] *See Noem v. Abrego Garcia*, 145 S. Ct. at 1018.

### 2.   Substantial Threat of Irreparable Harm

Next, Petitioner has plainly shown that he will be irreparably harmed in the absence of a TRO. He seeks asylum from Venezuela "and fears that he will suffer serious harm or death" there.[32] Petitioner's claims are consistent with those from his initial Petition, where he alleged that he "retired from the Venezuelan military due to his moral objection but was seen as a 'deserter' by the Venezuelan government and started to receive threats. As both he and his family faced ongoing threats and fear of being killed, Petitioner and his family left Venezuela sometime in June 2023."[33] If that's true, then Petitioner will remain at physical risk and unable to meaningfully pursue legal relief in United States courts unless the Government returns him to the United States.

### 3.   Balance of Hardships and Public Interest

Finally, the third and fourth factors "merge when the Government is the opposing party,"[34] as is true here. Concerning the balance of equities, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"[35] As to the public interest, the Court "should pay particular regard for the public consequences in employing the extraordinary remedy of [a TRO]."[36] "Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries

---

[32] Mot. TRO at 5.

[33] Pet. at 13.

[34] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[35] *Winter*, 555 U.S. at 24.

[36] *Id.*

where they are likely to face substantial harm."[37] Conversely, "[t]here is always a public interest in prompt execution of removal orders." [38]

Here, Petitioner is in a particularly vulnerable position having been removed to a country where he alleges that he is likely to face substantial harm.[39] Moreover, while the Court acknowledges the "public interest in prompt execution of removal orders," there does not appear to be a final removal order for Respondents to lawfully execute (at least not yet).[40] In fact, Respondents themselves already indicated that they removed Petitioner in error and appear willing to facilitate his return.[41] The Court therefore concludes that the public interest in redressing Petitioner's wrongful removal outweighs what little legitimate interest the Government has (if any) in executing a non-final removal order.

The equities and public interest therefore tip in Petitioner's favor.

*****

Having carefully considered each *Winter* factor, the Court finds that preliminary relief is necessary to restore the status quo *and* to preserve Petitioner's access to due process in accordance with the Constitution and relevant immigration statutes.

The final remaining question is how to tailor that relief. The Motion requests that the Court *order* Petitioner's return to the Western District of Texas.[42] As the Supreme Court

---

[37] *Nken*, 556 U.S. at 436.

[38] *Id.*

[39] *See supra* note 3 and accompanying text.

[40] *See supra* note 7 and accompanying text.

[41] *See* Resp. at 1.

[42] Mot. TRO at 7.

observed in *Abrego Garcia*, however, requiring the Government to effectuate an alien's return from a foreign country "may exceed the District Court's authority" considering the "deference owed to the Executive Branch in the conduct of foreign affairs."[43] For that reason, and consistent with *Abrego Garcia*, the Court will instead order Respondents to *facilitate* his return to the Western District of Texas.[44]

## III.    Conclusion

For the reasons stated above, the Court **GRANTS** the "Emergency Motion for Temporary Restraining Order" (ECF No. 6) **IN PART** to the extent it **DIRECTS** Respondents to take all available steps to facilitate the return of Jose Enrique Ojeda Duarte to the Western District of Texas as soon as possible.

The Court **DENIES** the "Emergency Motion for Temporary Restraining Order" (ECF No. 6) **IN ALL OTHER RESPECTS**.

The Court further **ORDERS** Respondents to provide written notice to the Court of (1) affirmative steps taken to facilitate Petitioner's return to the United States; and (2) any setbacks during that process. Respondents **SHALL** provide these updates at least **every ten days** until the Government returns him to the Western District of Texas.

The Court **ORDERS** Petitioner and his counsel to facilitate the implementation of this Order by all means available (*e.g.*, sharing Petitioner's location, status, and contact information with Respondents).

---

[43] *Noem v. Abrego Garcia*, 145 S. Ct. at 1018.

[44] *See id.* ("The order properly requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador.").

The Court **ORDERS** Respondents to transmit this Order to all relevant officers, agents, and employees under their control and with responsibility in this matter.

Finally, the Clerk **SHALL** serve copies of this Order on all named Respondents.

**So ORDERED and SIGNED this 20th day of April 2026.**

 

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

- 12 -